United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                   Hon. George Caram Steeh

v.

                                   Case No. 22-20159

D-1 Cortney Shaquan Shields,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, D-1 Cortney Shaquan Shields, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.    Count of Conviction

The defendant will waive his right to an indictment and will plead guilty to Count 1 of the Information. Count 1 charges the defendant with Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349.

## 2.    Statutory Minimum and Maximum Penalties

The defendant understands that the count to which he is pleading guilty carries the following maximum statutory penalties:

| Count 1 | Term of imprisonment: | 20 years |
| | Fine: | $250,000, or twice the loss |
| | Term of supervised release: | 3 years |

There are no statutory minimum penalties for this count of the Information.

**3.      Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes a sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional fraud charges against the defendant for the conduct reflected in the factual basis of this plea agreement.

**4.      Elements of Count of Conviction**

The elements of Count 1, Conspiracy to Commit Wire Fraud, are:

1. Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in the Information; and

2. The defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Wire Fraud, the object of the conspiracy, are:

1. The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

2. The defendant acted with the intent to defraud; and

3. That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

5. **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning at least as early as May 2020, and continuing through at least July 2021, in the Eastern District of Michigan, Southern

Division, and elsewhere, the defendants, Daeshawn Tamar Posey, Chaz Duane Shields, Cortney Shaquan Shields, and Brittany Levett Witherspoon, did knowingly, intentionally, and willfully combine, conspire, confederate, and agree with each other and other individuals, known and unknown to the government, to commit wire fraud. That is, the defendants, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations. The purpose of the scheme and artifice to defraud was for the defendants to unlawfully obtain state and federal unemployment insurance (UI) benefits. In executing this scheme, the defendants caused the transmission of writings, signals, and sounds by means of wire communication in interstate commerce.

Specifically, the defendants conspired to submit over 240 fraudulent UI claims to over 20 states and territories through the use of at least two distinct Internet Protocol (IP) addresses. The fraudulent claims were filed using the defendants' own names and personal identifying information (PII), as well as the names and PII of more than ten other individuals who were unaware that the defendants were using

their identities to file UI claims.  Once the claims were processed, the UI funds were either: (1) loaded onto pre-paid debit cards and mailed by the United States Postal Service to addresses controlled by the defendants within the Eastern District of Michigan; or (2) electronically deposited into bank accounts controlled by the defendants.  The defendants and their associates then accessed the UI funds by using Bank of America and J.P. Morgan Chase debit cards to make cash withdrawals from automated teller machines (ATMs) throughout metro Detroit and in California.  Each of these withdrawals caused a separate, interstate transmission of information via wire. The defendants made these withdrawals with both the intent to defraud and knowledge of the fact that they were not entitled to the UI funds.

As a result of their scheme, the defendants fraudulently obtained a total of more than $2,200,000 in unemployment benefits—primarily from the States of Michigan and California.

## 6.    Advice of Rights

The defendant has read the Information, has discussed the charges and possible defenses with his attorney, and understands the

crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

7.    **Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

8.    **Defendant's Guideline Range**

A.    **Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

B.    **Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

## C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

- § 2B1.1(a)(1) – Base Offense Level: 7

- § 2B1.1(b)(1)(D) – Loss exceeds $40,000 but is $95,000 or less (Increase offense level by 6)

- § 2B1.1(b)(2)(A)(i) – Offense involved 10 or more victims (Increase offense level by 2)

- § 2B1.1(b)(10)(C) – Offense involved sophisticated means (Increase offense level by 2)

- § 2B1.1(b)(11)(C) – Offense involved the unauthorized transfer or use of a means of identification unlawfully to obtain another means of identification (Increase offense level by 2)

## D.    Factual Stipulations for Sentencing Purposes

In or around May 2021, through his brother (and co-defendant) Chaz Shields, defendant Cortney Shaquan Shields fraudulently

obtained a Paycheck Protection Program loan, funded by BenWorth Capital, in the amount of $20,833.

### E.   Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.   Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

9.     **Imposition of Sentence**

A.     **Court's Obligation**

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

B.     **Imprisonment**

1.     **Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

2.     **No Right to Withdraw**

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if

the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.   Supervised Release

#### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three-year term of supervised release.

#### 2.   No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation.  The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.    Fines**

There is no recommendation or agreement as to a fine.

**E.    Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense.

The parties agree that the victims and the full amounts of restitution in this case, are as follows:

| | |
|---|---|
| **State of Michigan** | **$23,705.00** |
| **State of Louisiana** | **$7,284.00** |
| **Small Business Administration (BenWorth Capital)** | **$20,833.00** |

The Court will determine at sentencing if there are any additional victims and, if so, the amounts of restitution that they are owed.

Further, if it is later determined that the State UI victims or the Small Business Administration are not the ultimate bearers of the full amount of these losses given the state-and-federal partnership(s) that resulted in the outlay of the stolen funds, the defendant agrees to any necessary re-apportionment of the above losses, so as to ensure that restitution is earmarked to the appropriate government agencies.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F.   Forfeiture**

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, the defendant agrees to forfeit to the

United States any and all property, real or personal, which constitutes proceeds obtained or derived, directly or indirectly, from the defendant's violations of 18 U.S.C. § 1349 as charged in Count 1 of the Information, including but not limited to, $26,794.11 seized from the defendant's Bureau of Prisons Account #XXXXX-39.

The defendant further agrees, pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, to the entry of a personal forfeiture money judgment against him in favor of the United States in an amount to be determined by the Court at the sentencing hearing, which is equal to the amount of proceeds the defendant obtained or derived, directly or indirectly, from his violations of 18 U.S.C. § 1349.

The defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any other property owned or under the control of the defendant.  To satisfy the money judgment, the defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture of proceeds and the forfeiture money judgment, upon application by the United States at, or any time before, his sentencing in this case.  The defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the government.  The defendant agrees that the forfeiture order will be final and effective as to him upon entry by the Court.

The defendant agrees to complete and return a Financial Disclosure Form within three weeks of receiving it from government counsel, which may be used in any lawful manner to collect the money judgment amount and/or restitution, and which may be disclosed to any agencies or personnel of the government for that purpose.  The financial statement shall disclose and list all assets, funds and property of any kind in which the defendant has an interest, all liens and encumbrances against such assets, funds and property, and all of the defendant's liabilities. The financial statement must be signed by the defendant under penalty of perjury.

The defendant will cooperate with in the government as requested by the government in connection with the government's efforts to identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement.  The defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, property that is forfeitable to the United States under this agreement and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.  If any other person or entity has any interest in such property, the defendant will provide the government with the name and address of the person or entity that has an interest in, and/or possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

The defendant waives his right to have a jury determine the forfeitability of his interest in the above identified property as provided by Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure.

The defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and/or forfeiture of property covered by this Plea Agreement.

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

**G.    Special Assessment**

The defendant understands that he will be required to pay a special assessment of $100.00, due immediately upon sentencing.

10.   **Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of the guideline range determined by the Court, the defendant also waives any right he may have to appeal his sentence on any grounds.

11.   **Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

12. **Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

13. **Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

14. **Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

15. **Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

16.   **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on March 18, 2022. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Dawn N. Ison
United States Attorney

_____
John K. Neal
Chief, White Collar Crime Unit
Assistant United States Attorney

_____
Ryan A. Particka
Assistant United States Attorney

_____
Timothy J. Wyse
Assistant United States Attorney

_____
Corinne M. Lambert
Special Assistant U.S. Attorney

Dated: February 8, 2022

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Sanford Plotkin
Attorney for Defendant

Cortney Shaquan Shields
Defendant

Dated: 5-10-22