UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

          **Plaintiff**

vs                          Case No. 22-20159
                             Hon. George Careem Steeh

**CORTNEY SHAQUAN SHIELDS,**

          **Defendant**
_____

## SENTENCING MEMORANDUM SEEKING
## A VARIANCE FROM THE ADVISORY GUIDELINE

CORTNEY SHIELDS, through counsel, Sanford Plotkin, pursuant to 18 U.S.C. 3553(a) and USSG 5H1.3, respectfully submits Mr. Shield's diagnosed mental and emotional health deficits contributed to his commission of the offense justifying a variance from the advisory guideline. Further, Cortney Shield's criminal history score of 12 points appears quite overstated by at least 4 points, and the Court should consider imposing a sentence based upon a lower criminal history category.

**1. Nature & Circumstances of the Offense 18 U.S.C. 3553(a)(1)**

Defendant CORTNEY SHIELDS, age 31, is an inmate at FCI Allenwood, Pennsylvania. He is the younger brother of Co-Defendant Chaz Shields. In this conspiracy offense, four "UI claims were submitted in his name." (Complaint, para. 39). Mr. Shields also received several Western

Union transfers to his commissary account by his co-defendants, and knew or should have known those were illicit proceeds of the scheme unfortunately hatched by his brother, Chaz, and others.

While Cortney Shields did not create this scheme, he did become a passive recipient of funds through the transmission from his co-defendants to his commissary account at FCI Allenwood. He also sent several emails of aid and encouragement to a couple of participants.

Sadly, Mr. Shields was already half-way through completing an RDAP program at Allenwood when this occurred. On the positive side, Cortney has participated in several constructive programs at Allenwood, where he has been able to gain insight into his behavior, and be of help to other inmates, as well.

That insight is not lost, nor fabricated. Counsel has now had many constructive, therapeutic conversations with Cortney regarding his behavior. He is genuinely disappointed and ashamed of his involvement in this case. That remorse and reflection is sincere and bodes well for the future.

On May 10, 2022, Mr. Shields pled guilty plea pursuant to a Rule 11 Plea Agreement and accepted responsibility for his role in the offense. For guideline purposes, Mr. Shields is held responsible for $40,000 to $60,00 in fraud loss (PSIR, at p. 8, para. 23).

## 2. History & Characteristics of Mr. Shields 18 U.S.C. 3553(a)(1)

Mr. Shields is a survivor of an extremely tumultuous, traumatic, and violent childhood. At age 4, his father was killed, and his Mother Fredericka Shields moved him and older brother Chaz to Detroit to live with his grandmother. However, Grandmother was a cocaine addict and his mother, who sold drugs, went to prison. Upon her return, she was angry, abusive, and neglectful and would regularly beat the children—in a most vicious manner.

From ages 6 to 7, existence was a **living hell**; Courtney and Chaz were locked in the basement, scavenged food from the garbage, drank water from the hot-water tank and went to the bathroom in trash cans. This captivity would sometimes last weeks at a time. Shields has a scar on his elbow from being struck with a kitchen knife. He and Chaz would often run away and eat and sleep in store dumpsters. They endured physical abuse and neglect until at age 14, when they were removed from the home by Wayne County Child Protective Services. PSIR, at pp. 18-20. (See also Exhibit A, Child Abuse Conviction records of Fredericka Shields).

As a ward of the state, Mr. Shields was severely damaged; he was diagnosed as "emotionally impaired" with "post-traumatic stress disorder" and began attending counseling. PSIR at p. 20. As a young adult, from 2016

3

to 2019, Mr. Shields worked at Wireless Pit Stop Store, in Detroit as a mobile technician and at his mother's food truck. PSIR, p.21. Thus, he possesses technical devise skills he can utilize to hold and maintain employment upon his release from custody.

Moreover, Cortney Shields possesses an extremely intelligent and kind mind and character. Counsel has also witnessed this dimension of Shields during our conversations together. He has immense potential, and has simply never had an opportunity to flourish.

Counsel spoke with Cortney Shields's brother, Laquan Shields, who resides in Dallas, Texas with his two young daughters. Laquan not only verified all the family information contained in the PSR, but also expressed hope that Cortney would be able to relocate to his home in Dallas, Texas as soon as possible. The Bureau of Prisons has already approved Laquan's residence for release purposes.

Laquan Shields owns and operates a foreclosed home restoration business. He is in need of additional employees and intends to provide Cortney with both a home and full-time employment upon his release from custody. Cortney is excited to extricate himself from Detroit and begin his fresh start with the healthy and stable brother, Laquan.

4

As Laquan explained, Cortney and Chaz bore the brunt of the violent attacks by their mother. They were forced to live on the streets as young children. They survived on the streets together, literally eating out of dumpsters, and sleeping in protected areas on the streets at night. As Laquan said, "Cortney never had a chance. He would have died if he stayed in the house with mom."

Moreover, as they were homeless for most of their teen years, Cortney and Chaz Shields met many folks on the streets, many of whom were up to no good. However, those were the people that offered them a roof over their head at night; a temporary safe haven. Chaz Shields grew up on the streets with his brother in complete survival mode. They were left to themselves, and tragically would turn to these fraudulent schemes to survive. Not an excuse; rather an explanation.

### 3. Seriousness of the Offense, Promote Respect for Law & Just Punishment, 18 U.S.C. 3553(a)(2)(A)

The instant conspiracy offense is very serious. Mr. Shields played a role as one of several individuals who allowed submission of false claims in his name to receive benefits as appropriately detailed in the PSIR, Offense Conduct at pp. 6-8. Mr. Shields does not wish to minimize the seriousness of offense nor his role in the offense conduct.

### 4. Deterrence & Protection of the Public 18 U.S.C.(a)(2)(B)(C)

5

Mr. Shields is already serving a federal sentence. Deterrence will be served by Mr. Shields's further incarceration and a significant period under federal supervised release with mental health and substance abuse treatment and counseling. As stated, he possesses technical computer and mobile devise skills he can utilize to hold and maintain good employment upon his release from custody. His older brother in Dallas offers even better employment.

Mr. Shields has a home and full-time employment waiting for him in Dallas, Texas. Counsel submits that the sooner he gets there, finally away from Detroit, Michigan, he is much more likely to thrive. Deterrence is already drilled into Cortney's head by his current circumstances. He was close to completing his first serious sentence and allowed himself to take part in this offense. His frustration with himself cannot be overstated; nor can his potential for moving forward with a constructive and structured life in Dallas.

Interestingly, the Sentencing Commission directs courts to strongly consider the early termination of supervised release terms based on the reasoning that at some point, the confines of supervision can become counter-productive. Here, Cortney Shields understands full well his responsibility for his actions, and likely additional custodial time. However,

6

counsel urges the Court to carefully weigh just how much additional time is needed to fulfill sentencing functions, without taking away all hope for a bright future, and the incentive to reach those goals.

On a most positive note, Laquan Shields, Cortney's older brother in Dallas, commented that since this case began, he noticed Cortney's deeper recognition of just how unacceptable all his fraudulent behavior has always been. Survival as a young child may have justified many actions. However, now, as an adult, serving a custodial sentence and facing additional time, reality has settled in for Cortney. He sees his behavior as completely unacceptable, both for himself and the community, and is ready to blossom into responsible and constructive adulthood.

### 5. Grounds for Variance and/or Departure

### §5H1.3.    Mental and Emotional Conditions (Policy Statement)

Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.

In this extreme case, as detailed in the PSIR, Mr. Shields suffers from "mental and emotional conditions," being anxiety and post-traumatic stress disorder. This condition has required continuing mental health treatment and counseling. *See e.g. United States v. Andrew*, 2022 Westlaw 3971553 (6th

7

Cir. May 31, 2022) (variance for mental disabilities from childhood abuse); *United States v. Hunter*, 842 F.Appx. 999, 1004 (6th Cir. 2021) (mental health disability); *United States v. Du and Yu Qin*, 570 F.Appx. 490 (6th Cir. June 6, 2014) (variance for mental health condition);

As in *Andrew, supra*, there is no doubt Mr. Shields's mental and emotional disabilities coupled with his lifelong reliance and dependence on older brother Chaz, contributed to his participation in the offense. Cortney's sense of obligation and assistance to his brother's, and his own, survival run deep.

Here, he accepted his brother's direction and passively participated by allowing use of his name and failing to return western union deposits. While Counsel has never asserted such a claim, this case squarely presents sufficiently serious mental health circumstances. Counsel for Mr. Shields respectfully submits this justifies a variance under section 5H1.3.

**Cortney Shields' Criminal History is Overstated**

Lastly, counsel would note that because of older, misdemeanor conduct, when he was younger and on the streets, Cortney Shields' criminal history category is V, resulting in the advisory range of 41-51 months. These were minor misdemeanors, one involving a stolen cell phone for which he tried to obtain $20 for food, when he was just 18 years old. The

8

instant offense constitutes 2 points, as he was a primarily passive participant in this offense while serving a custodial sentence.

Consequently, USSG 5G.1 requires this Court to impose a consecutive sentence as Cortney participated in this offense while he was serving his current sentence at FCI Allenwood. The resulting criminal history enhancement creates an overstated history score.

To be clear: Cortney Shields is not violent; he does not pose a danger to the community; he has not committed violent offenses or trafficked in dangerous drugs. He has undergone an extensive period of fraudulent behavior that was borne out of a survival necessity in a dangerous environment. He is ready to move forward and contribute and pay back. It should also be noted that according to the PSR, Cortney Shields has done very well every time he has been on supervision.

Upon a review of the criminal history content, counsel would urge the Court to consider reducing the applicable category to III, and vary down accordingly to a 18 month sentence. This will allow sufficient time for Cortney to complete necessary and helpful therapeutic programs, without causing an unnecessary delay in allowing him to move forward with legitimate employment in Dallas, Texas.

9

WHEREFORE, Counsel for Defendant CORTNEY SHAQUAN SHIELDS respectfully requests this Honorable Court grant a variance and impose a sentence below the advisory guideline range.

                                                Respectfully submitted:

                                                s/Sanford Plotkin
                                                Sanford Plotkin (P38691)
                                                Attorney for Defendant
                                                30445 Northwestern Hwy, Suite 225
                                                Farmington Hills, MI 48334
                                                248-798-5756
                                                sanfordplotkin@gmail.com

October 13, 2022