United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

D-1 Cortney Shaquan Shields,

    Defendant.

    Hon. George Caram Steeh

    Case No. 22-20159

_____/

## **GOVERNMENT'S SENTENCING MEMORANDUM**

At the height of the COVID-19 pandemic, Cortney Shields participated in a conspiracy that filed dozens of fraudulent unemployment claims across at least twenty states and territories. This conspiracy resulted in the fraudulent disbursement of at least $2,200,000 of government funds intended for unemployment assistance during the pandemic. $30,989.00 of these claims can be attributed to either Shields or his close coconspirator, Brittney Witherspoon.

With his brother, Chaz, Cortney Shields also fraudulently obtained a $20,833 Paycheck Protection Program (PPP) loan, siphoning off government funds intended to aid small businesses during the pandemic.

Shields's guidelines, as estimated by the Presentence Investigation Report (PSR), call for a sentence of 41 months to 51 months.

For the reasons stated in this memorandum, a sentence of 51 months

1

incarceration—the high point of the guideline range—followed by three years of supervised release, is "sufficient, but not greater than necessary," pursuant to the purposes of 18 U.S.C. § 3553(a). The government believes that a high point sentence is justified because of aggravating factors not fully captured by the guidelines.

The government also requests that this sentence be imposed consecutive to the undischarged term of imprisonment that remains for the sentence he is currently serving, as directed by the U.S. Sentencing Guidelines. *See* USSG 5G1.3(a)

## I. OFFENSE CONDUCT

On May 10, 2022, Cortney Shields pleaded guilty, pursuant to a Rule 11 Agreement, to one count of Conspiracy to Commit Wire Fraud under 18 U.S.C. §1349.

Beginning at least as early as May 2020, and continuing through at least July 2021, Cortney Shields participated—while imprisoned—in a conspiracy that submitted over 240 fraudulent UI claims to over 20 states and territories. Over the course of the conspiracy, claims were submitted with the names and PII of more than ten other individuals who were unaware that their stolen identities were used to file UI claims. As a result of their scheme, the conspirators fraudulently obtained a total of more than $2,200,000 in unemployment benefits. $30,989.00 worth of these claims was obtained in Cortney Shields's name or the name of his close coconspirator Brittney Witherspoon. Some of the funds obtained in his name were

directly deposited into his personal bank account; other funds were transferred to his prison commissary account after originally being deposited into the bank accounts of others.

In addition, in or around May 2021, through his brother Chaz Shields, defendant Cortney Shields fraudulently obtained a Paycheck Protection Program loan, funded by BenWorth Capital, in the amount of $20,833. Defendant has acknowledged this loss as relevant conduct, bringing his acknowledged loss for the purposes of guidelines calculations to $51,822.00.

The government has seized $26,794.11 traceable to fraud from Cortney Shields's commissary account with the Bureau of Prisons.

## II.  Restitution

As part of his Rule 11 agreement, Shields has agreed that the Court will order restitution (1) to the following states in the following amounts: State of Michigan - $23,705.00; State of Louisiana - $7,284.00, and (2) to the Small Business Administration (concerning the fraudulent BenWorth Capital Loan) in the amount of $20,833.

The government is also seeking $149.90 in restitution for victim T.T., who paid for a credit monitoring service after learning that his identity was stolen and used as part of Cortney Shields's conspiracy.

### III. Forfeiture

Shields has agreed to the imposition of a Forfeiture Money Judgment against him in favor of the United States in the amount of $51,822.00, representing the value of property he personally obtained as a result of his crimes. Shields has further agreed to consent to the entry of an order of forfeiture implementing this judgment.

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, the defendant also agrees to forfeit to the United States any and all property, real or personal, which constitutes proceeds obtained or derived, directly or indirectly, from the defendant's violations of 18 U.S.C. § 1349 as charged in Count 1 of the Information, including but not limited to, $26,794.11 seized from the defendant's Bureau of Prisons Account #XXXXX-39. The United States agrees that after forfeiture of the defendant's Bureau of Prisons Account is final, the government will apply the $26,794.11 from the account to the Forfeiture Money Judgment for partial satisfaction.

The government will submit a proposed order to the Court.

### IV. Guidelines Range

The PSR calculates that Shields's sentencing guidelines call for a term of imprisonment of 41 months to 51 months. The parties do not dispute this calculation.

## V. Sentencing Factors

Title 18, United States Code, Section 3553(a), sets forth a number of factors that the Court shall consider in sentencing the defendant. These factors are described below, numbered as corresponding to Section 3553(a):

**(1) The nature and circumstances of the offense…**

Shields's guideline range is fixed largely by the agreed upon loss amount and his criminal history. These factors speak for themselves, but the guidelines fail to account for aggravating factors that elevate the nature and circumstances of Shields's crimes above the "average" fraud of the same magnitude.

Shields's crimes frustrated the government's attempts to support unemployed Americans who lost their jobs during the COVID-19 pandemic, as well as small business struggling to stay afloat. Shields's scheme took advantage of a unique historical moment. He and his coconspirators took advantage of the government's need for rapid action during an unprecedented crisis, siphoning off millions of dollars in government aid. Not only did Shields's conduct frustrate the government's aid scheme, but his crimes undermined faith in the government's ability to help unemployed Americans at their most vulnerable.

The guidelines do not capture these factors; they cannot because of unique circumstances connected to a historic pandemic. But the government asks the Court

5

to take this background into account in fashioning a sentence that best serves the interest of justice.

### …and the history and characteristics of the defendant;

Likewise, the guidelines do not capture the entirety of Shields's history and character that are relevant to sentencing. Shields's criminal history is extensive. A criminal history category of V is incorporated into the calculated guidelines of 41 to 51 months, but the Court should consider Shields's lengthy record—spanning from 2009 until the present—when evaluating his character.

Shields is not only an unrepentant criminal, but he is also an unrepentant fraudster—his prior criminal activity includes check fraud, credit card fraud, and using stolen iPhones to defraud mobile phone providers. That Shields committed his most recent crimes while incarcerated for fraud underscores his unwillingness to abide by the law.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

Shields's punishment should take into account not only the scope and seriousness of his criminal conduct but also the need to deter future crimes—both by Shields and by others. With respect to specific deterrence, significant incarceration is necessary to demonstrate to Shields the proverbial mantra that

"crime does not pay," especially since he has been undeterred by his prior experience with the criminal justice system. It is difficult to come up with a more striking example of prior failed deterrence than someone who commits crimes from prison.

It is also evident that significant, further incarceration is necessary to protect the community. Given that none of Shields's prior sentences have deterred him from committing fraud after fraud, it is imperative that he be removed from society for an extended period of time.

The sentence must also function as a general deterrent. This is crucial in this case. Over the past two years, the government has acted rapidly to enact numerous programs to aid to those whose livelihoods have been impacted by the COVID-19 pandemic. Unemployment aid, payroll loans, and other forms of aid have been aggressively rolled out to help keep Americans financially stable during dark times. Unfortunately, but also unsurprisingly, fraudulent applications for aid are rampant. Harsh punishment for those caught abusing aid programs is needed to deter others who see these programs as targets for fraud.

**(3) The kinds of sentences available**

The maximum penalty for Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349, is twenty years imprisonment followed by up to three years of supervised release, and/or a fine not to exceed $250,000.00.

**(4) The sentencing range established by the Guidelines**

As set forth above in Section IV, the appropriate sentencing range, pursuant to the U.S. Sentencing Guidelines, is 41 to 51 months imprisonment.

**(5) Pertinent policy statements issued by the Sentencing Commission**

The government is unaware of any pertinent policy statement issued by the United States Sentencing Commission.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct**

The government believes that a guideline sentence will best ensure uniformity in sentencing among similarly situated defendants.

**(7) The need to provide restitution**

Restitution is mandatory in this case, as dictated by the Mandatory Criminal Restitution Act codified at 18 U.S.C. § 3663A. The necessary restitution in this case is described above in Section II.

## RECOMMENDATION

For all the reasons above, the government recommends that defendant Cortney Shields be sentenced to a term of 51 months in prison followed by three years of supervised release and also ordered to pay restitution as described above in Section II. The government recommends that any sentence of incarceration be imposed consecutive to the sentence that Shields is currently serving.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*/s/ Timothy J. Wyse*
Timothy J. Wyse
Assistant U.S. Attorney
(313) 226-9144
211 West Fort, Suite 2001
Detroit, Michigan 48226
Timothy.Wyse@usdoj.gov

Ryan A. Particka
Assistant United States Attorney

Corinne M. Lambert
Special Assistant U.S. Attorney

October 13, 2022